```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
SHERON HEARST, as Administratrix
of the Estate of Byron Hearst, on
her own behalf, and on behalf of         MEMORANDUM AND ORDER
infant children, BREYANNA HEARST         PARTIALLY MODIFYING AND
and BYRON HEARST; and SHERON             ADOPTING REPORT AND
HEARST individually,                     RECOMMENDATION

                  Plaintiffs,            05-cv-5272(KAM)(RML)

     -against-

THE CITY OF NEW YORK, NEW YORK
CITY POLICE DEPARTMENT, and
POLICE LIEUTENANT SHAMIK WALTON,

                  Defendants.
----------------------------------X
```

**KIYO A. MATSUMOTO, United States District Judge:**

This case arises out of an incident that occurred on May 8, 2005, when defendant Shamik Walton ("Walton"), a Lieutenant with the New York City Police Department ("NYPD") Internal Affiairs Bureau, shot and killed his tenant, Byron Hearst ("Hearst"), during a dispute that arose when Walton came to collect the rent while he was off duty. Plaintiff Sheron Hearst ("plaintiff"), as executor of Hearst's estate, commenced this action against the City of New York ("City"), the NYPD, and Walton, seeking relief pursuant to 42 U.S.C. § 1983 and state tort law. (*See* ECF No. 1, Complaint filed 11/9/2005.)

On May 13, 2011, the City filed a motion for summary judgment on behalf of itself and the NYPD. (ECF No. 44, Notice

of Motion for Summary Judgment, filed 5/13/2011; ECF No. 45, [City and NYPD] Defendants' Memorandum of Law in Support of their Motion for Summary Judgment, dated 12/17/2010.) Plaintiff and Walton both opposed the City's motion. (ECF No. 48, Plaintiff's Memorandum of Law in Opposition to Defendant The City of New York's Motion for Summary Judgment, dated 3/17/2011; ECF No. 50, [Defendant Walton's] Memorandum of Law in Opposition to Defendant City's Motion for Summary Judgment, dated 3/18/2011.) On October 12, 2011, this court referred the City's motion to Magistrate Judge Robert M. Levy for a Report and Recommendation. (Order Referring Motion dated 10/12/2011.)

After hearing oral argument on January 5, 2012, Magistrate Judge Levy issued a Report and Recommendation on February 21, 2012, recommending that the City's motion for summary judgment be granted in part and denied in part. (*See* ECF No. 54, Report & Recommendation, dated 2/21/2012 ("R&R").) Specifically, Magistrate Judge Levy recommended that the court:

  (1) dismiss plaintiff's claims against the NYPD because it is not a suable entity (*id.* at 1 n.1);

  (2) dismiss plaintiff's claims against the City pursuant to 42 U.S.C. § 1983 (*id.* at 4-6);

  (3) dismiss plaintiff's claims against the City and Walton for negligence (*id.* at 7 n.5);

  (4) dismiss plaintiff's claims against the City for negligent hiring and retention (*id.* at 5 n.4);

  (5) deny the City's motion for summary judgment on plaintiff's state law intentional tort claims

2

against the City pursuant to 28 U.S.C. § 1367(c) (*id.* at 6-7); and

(6) deny the City's motion for summary judgment on plaintiff's state law intentional tort claims against the City for *respondeat superior* liability (*id.* at 12-14).

Now before the court are the City's timely objections to the Report and Recommendation and plaintiff's responses to the City's objections.[1] (*See* ECF No. 56, Defendants' Memorandum of Law in Support of their Objections to the Report and Recommendations of the Honorable Robert M. Levy Pursuant to Federal Rule of Civil Procedure 72, dated 3/8/2012 ("City Obj." or "Objections"); ECF No. 57, Plaintiff's Memorandum of Law in Support of the Findings to the Report and Recommendations, filed 3/22/2012.) For the reasons set forth below, the Objections are overruled and the Report and Recommendation is adopted.

**STANDARD OF REVIEW**

**I.  Review of Report and Recommendation**

To the extent that a party makes specific and timely written objections to a magistrate judge's findings and recommendations, the district court must review *de novo* "those portions of the report . . . to which objection is made." 28 U.S.C. § 636(b)(1)(C); *see also* Fed. R. Civ. P. 72(b)(3); *United*

---

[1] Plaintiff and Walton both received electronic notification of the Report and Recommendation on February 21, 2012. By Order dated February 28, 2012, the court extended the time for objections until March 8, 2012 and responses thereto until March 22, 2012. (Order dated 2/28/2012.) Neither plaintiff nor Walton filed any objections to the Report and Recommendation by March 8, 2012. Only plaintiff submitted a response to the City's Objections.

3

*States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997). "However, when a party makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the Report and Recommendation only for clear error." *Walker v. Vaughan*, 216 F. Supp. 2d 290, 292 (S.D.N.Y. 2002) (citation and internal quotation marks omitted); *see also Ortiz v. Barkley*, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008) ("Reviewing courts should review a report and recommendation for clear error where objections are merely perfunctory responses, argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original petition.") (internal quotation marks omitted). Upon review, "[t]he district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

## DISCUSSION

### I. Background

Familiarity with the underlying facts as set forth in the Report and Recommendation is presumed. (*See* ECF No. 54, R&R at 9-12.) Except as noted herein, the parties do not dispute the Report and Recommendation's recitation of the undisputed facts, except that the City objects to the consideration of items not in the record. Accordingly, the court relies upon the

4

underlying facts as set forth in the Report and Recommendation with the exceptions noted.

## II. Application

As an initial matter, no party has objected to the first through fifth recommendations in Magistrate Judge Levy's Report and Recommendation. The court has reviewed those portions of Magistrate Judge Levy's Report and Recommendation and finds no clear error. Accordingly, (1) plaintiff's claims against the NYPD are dismissed; (2) plaintiff's claims against the City pursuant to 42 U.S.C. § 1983 are dismissed; (3) plaintiff's claims against the City and Walton for negligence are dismissed; (4) plaintiff's claims against the City for negligent hiring and retention are dismissed; and (5) the City's motion for summary judgment on plaintiff's state law intentional tort claims against it pursuant to 28 U.S.C. § 1367(c) is denied.

In its Objections to the Report and Recommendation, the City challenges Magistrate Judge Levy's conclusion that there are disputed issues of material fact as to whether Walton was acting within the scope of his employment when he shot Hearst, and thus whether the City can be held liable under the doctrine of *respondeat superior* for Walton's conduct. The City asserts that the undisputed facts in the record demonstrate that Walton was acting solely in his personal capacity when he shot

5

Hearst, and that any purported facts to the contrary relied upon in the Report and Recommendation are not supported by admissible evidence. (ECF No. 56, City Obj. at 4-9.)

The City's Objections focus primarily on three purported facts relied upon by the Report and Recommendation in finding a dispute regarding whether Walton was acting within the scope of his employment: (1) the testimony of Thomas Mason ("Mason"), the Deputy Chief of the NYPD Internal Affairs Bureau, that he considered the shooting "a police incident" and that "he believed Walton had been attempting to place [Hearst] into custody for assaulting him" (*see* ECF No. 48-3, Declaration of Richard M. Levy in Opposition to the Motion by Defendant the City of New York for Summary Judgment, dated 3/17/2011 ("Levy Decl.") Ex. B, Deposition Transcript of Thomas Mason, dated 3/24/2010 ("Mason Dep.") at 79; ECF No. 56, City Obj. at 9, 11-15); (2) Walton's application for and receipt of overtime pay for the period during which the shooting occurred (*see* ECF No. 48-3, Levy Decl. Ex. A, Overtime Pay Reports; ECF No. 56, City Obj. at 9, 15-16); and (3) the Corporation Counsel's decision not to "represent or indemnify [defendant Walton] because the shooting occurred during a purely personal dispute" (*see* ECF No. 56, City Obj. at 9, 17). In light of the City's timely Objections to the Report and Recommendation, the court has undertaken *de novo* review of the full record, including the

6

applicable law, the pleadings, the parties' submissions in connection with the instant motion for summary judgment, the Report and Recommendation, the City's Objections, and plaintiff's responses to the City's Objections. *See* 28 U.S.C. § 636(b)(1).

In order for the City to be held liabile for Walton's actions based on a theory of *respondeat superior*, plaintiff or Walton must establish that Walton was "engaged in the furtherance of the employer's enterprise at the time of the employee's wrongdoing, and the employer was or could have been exercising some control over the employee's actions." *Longin v. Kelly*, 875 F. Supp. 196, 201-02 (S.D.N.Y. 1995). If Walton's "conduct is brought on by a matter wholly personal in nature, the source of which is not job-related, his actions cannot be said to fall within the scope of his employment." *Perez v. City of New York*, No. 94 Civ. 2061, 1996 U.S. Dist. LEXIS 2812, at *6 (S.D.N.Y. Mar. 7, 1996) (quoting *Stavitz v. City of New York*, 471 N.Y.S.2d 272, 274 (1st Dep't 1984)).

Generally, the question of whether a particular act was done within the scope of employment is a question of fact for the jury. *Ravenell v. City of Albany*, No. 96-CV-1696, 2000 U.S. Dist. LEXIS 15135, at *14-15 (N.D.N.Y. Oct. 17, 2000) (citing *Young Bai Choi v. D & D Novelties*, 157 A.D.2d 777, 78 (2d Dep't 1990)). However, "a trial is not necessary where a

7

defendant's right to summary judgment is established as a matter of law." *Id.* at *15 (quoting *Hall v. Danforth*, 172 A.d.2d 906, 906-07 (3d Dep't 1991)); *see also Girden v. Sandals Int'l*, 262 F.3d 195, 205 (2d Cir. 2001) ("Whether an employee was acting within [the] scope [of his or her employment] at a particular time requires a fact-intensive inquiry.  The ultimate determination of this issue is ordinarily for the jury, although it can be made as a matter of law in some instances." (citations omitted)).  In the context of off-duty police officers, courts have noted that "the act of identifying oneself as a police officer, producing a shield, and executing an arrest, because one's employment with the City confers the authority to do so, does not automatically create liability for the City."  *Perez*, 1996 U.S. Dist. LEXIS 2812, at *6-7 (citing *Stavitz*, 471 N.Y.S.2d at 274); *see also Devito v. Barrant*, No. 03-CV-1927, 2005 U.S. Dist. LEXIS 22444, at *27 (E.D.N.Y. Aug. 23, 2005) ("While [the off-duty] officer may have identified himself as a police officer and flashed his badge, these facts do not necessarily end the inquiry in plaintiff's favor.").  Merely because such facts are not determinative does not render them irrelevant.  Indeed, "[w]hether an off-duty police officer was arguably engaged in police business is most often left for the jury." *Medley v. City of New York*, No. 94-CV-3708, 1998 U.S. Dist. LEXIS 20056, at *9-10 (S.D.N.Y. Dec. 3, 1998).

8

Moreover, in considering a motion for summary judgment, the court must construe all facts and draw all reasonable inferences in the light most favorable to the nonmoving parties. *MBIA Inc. v. Fed. Ins. Co.*, 652 F.3d 152, 158 (2d Cir. 2011).

A.   **Attempt To Arrest Hearst**

The fundamental issue in the City's first Objection is whether whether Walton's actions reflected an attempt to place Hearst under arrest, and whether that, in turn, reflected an attempt to further the interests of the NYPD.  Although the City focuses its Objection on the Report and Recommendation's reference to Mason's testimony, the objection as phrased fails to capture fully the underlying factual dispute identified by the Report and Recommendation, which considers the entirety of the evidence presented, and not one particular statement.[2]

Although, by itself, whether Walton may have been attempting to arrest Hearst would not be dispositive of the ultimate question of whether Walton acted within the scope of his employment, *Perez*, 1996 U.S. Dist. LEXIS 2812, at *6, this

---

[2] The court notes, however, that Deputy Chief Mason's testimony that he believed Walton was facilitating police business at the time of the shooting by "attempting to place [Hearst] into custody for assaulting him," (ECF No. 48-3, Levy Decl. Ex. B, Mason Dep. at 79), would be relevant if it can be considered an official statement of the NYPD.  *See, e.g., Becker v. City of New York*, 745 N.Y.S.2d 857, 862 (N.Y. Civ. Ct. 2002) (denying summary judgment where the evidence in the case included, *inter alia*, "a finding by an official of the New York City Police Department, charged with the duty to investigate such incidents and to make such findings, that at the time of this incident, defendant . . . was acting in the line of duty.").

9

is one of several considerations for a jury in deciding the ultimate fact of whether Walton was engaged in the furtherance of the NYPD's business or in wholly personal acts, and therefore it is material. *See Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) ("A fact is material if it might affect the outcome of the suit under the governing law." (citing *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008))).

Here, the evidence in the record demonstrates that Walton made arguably conflicting statements during his criminal trial and his subsequent civil deposition about whether he was attempting to place Hearst under arrest. A jury could consider whether, during his criminal trial, Walton testified that he did not actually attempt to place Hearst under arrest, as the City asserts, or whether he believed he lacked the physical power to do so:

> Q   Why did you take the gun out?  Tell the jury why you took your gun out.
>
> A   Mr. Hearst almost knocked me out on the steps.  I'm armed.  If I'm unconscious he can take my gun from me.  I don't know what he'll do.  My wife is down the block.  There's people around.  It's broad daylight, we're outside.  There's a good possibility that somebody other than myself and somebody else might get killed.
>
> Q   At this time you are a New York City Police Officer, are you not?
>
> A   Yes, I am.

10

> Q   Is a New York City Police Officer allowed to let someone remove his firearm?
>
> A   No, sir.  Actually, there's a charge, failure to safeguard in addition to any consequences that might occur if you live to let it happen.
>
> Q   Was there a plan — did you have something in your mind that you intended to do once you identified that you were a cop?  What did you intend to do?
>
> A   My intentions was [sic] to get control of the situation, try to get in the door, continue to the door for my safety and call 911 because my intentions were to have — get assistance to have Hearst arrested.
>
> Q   Was it your intention to arrest him yourself?
>
> A   I couldn't — I couldn't do that.  I just — I knew I didn't have the power to do that.

(ECF No. 27-2, Declaration of Tonya Jenerette, dated 10/17/2010 ("Jenerette Decl.") Ex. B, Transcript of Testimony of Shamik Walton at Criminal Trial at 451-52.)  During his deposition in the instant civil action, Walton stated unequivocally that by drawing his gun, he made an effort to arrest Mr. Hearst and intended to "get Mr. Hearst arrested.":

> Q   So, you said although you were off duty at the time of the shooting you were subsequently placed on duty; is that correct?
>
> A   Yes.
>
> Q   How did that happen?
>
> A   You are taught that when you take police action you are on the clock.

11

>     Q    You considered yourself to be taking police action at the time you shot Mr. Hearst?
>
>     A    The minute my firearm came out, the minute I said, "Stop, I'm a cop," I thought I was taking police action.
>
>     Q    Why did you believe you were taking police action?
>
>     A    Because my intention at that point was to get Mr. Hearst arrested, control the situation and get him arrested.
>
>     Q    Did you tell him you were going to arrest him?
>
>     A    Didn't have an opportunity.
>
>     Q    Did you make an effort to arrest him?
>
>     A    Yes, that was the drawing of the firearm to control the situation so, therefore, I have to[] get control of the situation before [I] can arrest[] someone who over powered me.
>
>     Q    Your intention was to place him under arrest?
>
>     A    Yes.
>
>     Q    Did you say, "Stop, I'm a cop, you are under arrest"?
>
>     A    I didn't have an opportunity.
>
>     Q    Why not?
>
>     A    By the time I said, "Stop, I'm a cop", Mr. Hearst was on me.

(ECF No. 47-3, Jenerette Decl. Ex. C, Deposition of Shamik Walton, dated 2/16/2010 ("Walton Dep.") at 189-90.)

The City argues that plaintiff and Walton may not rely on contradictions between Walton's criminal trial testimony and

12

his deposition testimony to create a triable issue of fact because his deposition testimony is "self-serving". (ECF No. 56, City Obj. at 20-21.) The rule the City cites, however, prohibits the nonmoving party from manufacturing an issue of fact "by submitting an affidavit *in opposition to summary judgment* that contradicts prior deposition testimony." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 104 (2d Cir. 2010) (emphasis added); *see also Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001) ("[F]actual allegations that might otherwise defeat a motion for summary judgment will not be permitted to do so when they are *made for the first time in the plaintiff's affidavit opposing summary judgment* and that affidavit contradicts [his] own prior deposition testimony." (emphasis added)). Here, in contrast, the factual dispute arises from Walton's arguably inconsistent statements during his criminal trial and his deposition, none of which were made for the purpose of the instant motion for summary judgment.

It is for the jury in this action to decide if Walton's prior testimony at his criminal trial and at his deposition is inconsistent, in deciding whether to credit Walton's trial testimony and how much weight it deserves. Because reasonable jurors may disagree as to whether Walton was, in fact, attempting to place Hearst under arrest when he drew his firearm and announced that he was a police officer, and,

13

accordingly, whether Walton's actions were in the scope of his employment, the jury must be given the opportunity to observe Walton and determine whether his testimony is credible. *See Lipton v. Nature Co.*, 71 F.3d 464, 472 (2d Cir. 1995) ("Determinations of credibility are within the province of the jury and may not be resolved on summary judgment." (citing *United States v. Rem*, 38 F.3d 634, 643-44 (2d Cir. 1994))).

**B. Overtime Payments**

Contrary to the City's assertions in its second Objection, the undisputed evidence in the record that Walton was paid overtime for the period during which the shooting occurred supports the conclusion that the jury, and not the court, must decide whether Walton was acting within the scope of his employment when he shot Hearst. NYPD overtime pay records demonstrate that Walton requested and was paid overtime for the period from 2:30 p.m. to 12:30 a.m. on May 8, 2005, which includes the time during which Walton shot Hearst. (ECF No. 48-2, Plaintiff's Assertion of Additional Facts ¶ 1; ECF No. 48-3, Levy Decl. Ex. A, Overtime Pay Reports; ECF No. 47-3, Jenerette Decl. Ex. C, Walton Dep. at 51-53, 175-76; ECF No. 48-3, Levy Decl. Ex. B, Mason Dep. at 13-17.) According to Mason, the Deputy Chief of the NYPD Internal Affairs Bureau, the NYPD does not "pay overtime for officers that are not on duty." (ECF No. 48-3, Levy Decl. Ex. B, Mason Dep. at 41.) Mason asserted,

14

however, that it was his "opinion" that Walton was paid for the time during which the shooting occurred due to a "mistake" that should have been caught by the individual responsible for reviewing Walton's overtime slip. (*Id.* at 41-42, 64-67.)

Nevertheless, the City has presented no evidence that the NYPD notified Walton of the mistake, attempted to recoup the overtime purportedly paid to Walton in error, or otherwise took any other action consistent with a mistaken payment to Walton for overtime for the period of time during which the shooting occurred. "[D]rawing all factual inferences and resolving all ambiguities in favor of the nonmoving party," as it must, *Tri-State Empl. Servs., Inc. v. Mountbatten Sur. Co., Inc.*, 295 F.3d 256, 260 (2d Cir. 2002), the court finds that a reasonable jury could find that the NYPD ratified Walton's actions by finding that he was on duty and paying him overtime for the time encompassing the shooting, and that Walton therefore was acting within the scope of his employment.

C.  **Representation by Corporation Counsel**

Finally, the City objects to the Report and Recommendation's statement, without citation, that "[t]he Corporation Counsel's office later informed Walton that it would not represent or indemnify him because the shooting occurred during a purely personal dispute" because the Corporation

15

Counsel's decision is not part of the record in this matter.[3] (ECF No. 56, City Obj. at 17; ECF No. 54, R&R at 12.) The court finds that this Objection, while valid, does not affect the court's conclusion that there remain material issues of fact as to whether Walton was acting within the scope of his employment when he shot Hearst.

\*   \*   \*

Accordingly, because the court finds, upon *de novo* review, that there remain material issues of fact as to whether Walton was acting within the scope of his employment when he shot Hearst, the City's Objections are overruled and its motion for summary judgment on this issue is denied.

---

[3] It appears that this purported fact was based on statements made by Corporation Counsel, as counsel for the City, during oral argument before Magistrate Judge Levy on January 5, 2012:

> Because Lieutenant Walton was off-duty, and involved in a wholly personal dispute and officers are informed that if they are — they discharge their firearms during a personal dispute and not in furtherance of any duty owed to the City, they will not be indemnified, nor represented by the Corporation Counsel. In this case, because Lieutenant Walton was off-duty at the time of the incident, he had gone to collect his rent and shot in self-defense during a personal dispute, the corporation counsel denied representation and also denied indemnification.

(ECF No. 53, Transcript of Civil Cause for Conference, dated 1/5/2012, at 3-4.) A statement made by counsel during oral argument may not be relied upon in a motion for summary judgment as an undisputed fact. *See* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . .").

## CONCLUSION

For the reasons set forth above, the City's Objections are overruled and Magistrate Judge Levy's well-reasoned and thorough Report and Recommendation is adopted, with the above-noted modifications, as the opinion of the court. Accordingly, (1) plaintiff's claims against the NYPD are dismissed; (2) plaintiff's claims against the City pursuant to 42 U.S.C. § 1983 are dismissed; (3) plaintiff's claims against the City and Walton for negligence are dismissed; (4) plaintiff's claims against the City for negligent hiring and retention are dismissed; and (5) the City's motion for summary judgment on plaintiff's remaining state law intentional tort claims is denied.

**SO ORDERED.**

Dated:   March 26, 2012
         Brooklyn, New York

                                    /s/
                              **Kiyo A. Matsumoto**
                              United States District Judge
                              Eastern District of New York

17